UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **KIMBERLY S. SMITH** | **CIVIL ACTION NO. 10-0121** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **JOHN E. POTTER, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

RULING

Pending before the Court are Defendants John Potter, Postmaster General, and the United States Postal Service's Motion for Summary Judgment. [Doc. No. 13]. Plaintiff Kimberly Smith ("Smith") filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment. [Doc. No. 37].

For the following reasons, the Government's motion is GRANTED IN PART and DENIED IN PART.

I.  Background

This disability discrimination, hostile work environment, and retaliation case stems from adverse employment actions Smith claims she suffered due to a number of disabilities.[1] Smith began working with the United States Postal Service on March 18, 1995. Since late 1995, Smith has worked at the Post Office in Bastrop, Louisiana. Although the record does not clearly indicate all of Smith's duties as a postal employee, her responsibilities included driving a delivery truck.

---

[1] Although the bulk of Smith's discrimination claim rests on her fibromyalgia, she also claims to suffer from chronic fatigue, post-traumatic stress disorder, irritable bowel syndrome, pre-diabetes, hypoglycemia, abnormal heart palpitations, and carpal tunnel syndrome.

Smith alleges that between August 2007 and February 2008, the Bastrop Postmaster, Serinna Waters ("Postmaster Waters"), discriminated against her on the basis of her disability and retaliated against her for filing Equal Employment Opportunity Commission ("EEOC") complaints.

On August 8, 2007, Smith claims she became ill from heat exhaustion while driving her route. Smith worked on both August 8 and 9, but on August 10 submitted a request for five days of sick leave. Smith states that postal management denied this request even though she had accrued sufficient sick leave to cover the requested absence.

On August 29, 2007, Smith left work because she was not feeling well. As she drove away from the Bastrop Post Office, Smith's vehicle struck a police vehicle in the parking lot. On September 13, 2007, postal management issued a letter of warning to Smith concerning her absence, which noted Smith "seemed impaired" before leaving on August 29, 2007. [Doc. No. 35-1, p. 2].

On September 18, 2007, Smith tripped over a power cord at the Bastrop Post Office, injuring herself. Postal management issued a Notice of Traumatic Injury that attributed the accident to Smith's "inattentativeness." [Doc. No. 34-2, p. 1]. Around this period, Smith also claims that Postmaster Waters allowed Smith's coworkers to "laugh and make negative comments about [Smith's] disabilities." [Doc. No. 1, p. 3]. Following these incidents, Smith filed her original discrimination claim with the EEOC on January 26, 2008.

On February 16, 2008, several postal customers noticed Smith driving erratically while delivering mail and eventually driving into a ditch. Police escorted Smith away from her postal vehicle, and on February 25, 2008, postal management placed Smith on non-pay status. Postal

management later reimbursed Smith for the missed pay after an internal investigation concluded that Postmaster Waters was unable to rebut Smith's claim that her behavior was caused by low blood sugar.

Beginning on February 20, 2008, Smith claims postal management declined to give her overtime work because she had filed an EEOC complaint. On November 1, 2008, postal management gave Smith a notice of removal after an investigation uncovered that Smith did not disclose a prior DWI conviction on her application to the Postal Service. This led Smith to add a retaliation claim to her prior EEOC complaint on December 14, 2008.

On December 23, 2008, postal management revoked the notice of removal because the DWI conviction occurred six years prior to Smith's employment with the Postal Service. Nonetheless, postal management placed Smith on a 14-day, unpaid suspension for not accurately completing her application. On January 9, 2009, Smith struck another vehicle while driving her delivery truck. As a result, Smith was placed on a second, 14-day suspension. After serving her suspension, Smith submitted a FMLA certification that requested additional leave time. Postal management denied this request, but Smith did not return to work at the Bastrop Post Office.

Following an investigation, Smith requested a hearing before an EEOC Administrative Law Judge ("ALJ"). The ALJ issued a decision denying Smith's claims on May 1, 2009. Smith appealed the ALJ's decision to the Office of Field Operations, which upheld the ALJ's decision on October 26, 2009. Although postal management has never officially terminated Smith's employment with the Bastrop Post Office, Smith states that her last day at work was February 19, 2009.

Smith filed this suit on January 27, 2010, alleging unlawful disability discrimination and

hostile work environment under The Rehabilitation Act. 29 U.S.C. §§ 791, 794. Smith also alleges that Postmaster Waters violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), by retaliating against her for filing a discrimination claim with the EEOC. Smith seeks an injunction prohibiting postal management from engaging in any additional, discriminatory practices and ordering Postmaster Waters to reinstate Smith to full pay status. Smith also seeks recovery for lost wages, liquidated damages, lost fringe benefits, other pecuniary losses, compensatory damages, attorney fees, litigation expenses, and costs.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court

must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### III. LAW & ANALYSIS

In its Motion for Summary Judgment, the Government argues that the Court should grant summary judgment against Smith because she has failed to show a prima facie case of disability discrimination, hostile work environment, and retaliation, and because the Government has offered non-retaliatory reasons for the actions taken against Smith. Smith argues that the Court should deny the Motion for Summary Judgment because there is a genuine issue of material fact as to whether Smith was disabled. Additionally, Smith argues there is a genuine issue of material fact as to whether postal management discriminated against her, whether she was subjected to a hostile work environment, and whether the personnel actions were retaliatory.

The Rehabilitation Act protects an "otherwise qualified individual with a disability in the United States . . . [from] discrimination under any program or activity receiving Federal financial assistance . . . or activity conducted by the United States Postal Service." 29 U.S.C. § 794(d). The Rehabilitation Act adopts the standards applied under Title I of the Americans with Disabilities Act ("ADA") to determine whether there has been a violation. 29 U.S.C. § 794(d).

The ADA defines a qualified individual as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In turn, the ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded

5

as having such an impairment." § 12102(2).[2]

The ADA regulations provide that a plaintiff is substantially limited when she is unable to perform a major life activity that the average person in the general population can perform or is significantly restricted in her ability to perform the activity. 29 C.F.R. § 1630.2(j). In determining whether an individual is substantially limited in a major life activity, EEOC guidance suggests that courts consider: "(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long-term impact, or the expected permanent or long-term impact resulting from the impairment." 29 C.F.R. § 1630.2(j).[3]

When a Rehabilitation Act plaintiff relies on circumstantial evidence, the Court evaluates the case under the *McDonnell Douglas* burden-shifting framework. See generally *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 279-80 (1973)). Under this framework, a plaintiff must demonstrate "(1) [s]he is disabled, has a record of disability, or is regarded as disabled; (2) [s]he is qualified for the job; (3) [s]he was subjected to an adverse employment action on account of [her] disability; and (4) [s]he was replaced by or treated less favorably than non-disabled employees." *McInnis*

---

[2] As the Fifth Circuit has noted, there are two sources of guidance for determining whether a plaintiff's disability qualifies under the Rehabilitation Act–the regulations interpreting the Rehabilitation Act as well as the regulations interpreting the ADA. *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 (5th Cir. 2009). Therefore, the Court uses both sources in evaluating Smith's complaint.

[3] The EEOC regulations implementing the ADA Amendments Act of 2008 emphasize that courts should not rigorously scrutinize a plaintiff's disability. Instead, the new regulations focus on whether discrimination has occurred. Nonetheless, the facts underlying Smith's disability claim occurred prior to the January 2009 effective date. Therefore, the Court evaluates Smith's claims under the ADA and associated agency guidance as it existed prior to the 2008 amendments.

411 U.S. at 279.

Once a plaintiff meets this burden, the defendant must "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 280. If the defendant meets this burden, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination; or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312-13 (5th Cir. 2004).

### A.   Disability

Regarding the disability discrimination claim, the Government argues that Smith is not disabled within the meaning of the Rehabilitation Act. According to the Government, "[Smith's] medical reports do not reflect that she suffers from any limitation to a major life activity. To the contrary, her doctors repeatedly indicate in their notes that she is able to drive and perform her job." [Doc. No. 13-1, p. 18]. The Government emphasizes that Smith's doctors recommended a diet that should have prevented any hypoglycemic reactions. Another doctor advised that an increased amount of time off from work would prevent her reactions. Finally, the Government states that the Bastrop Post Office convened a committee to address Smith's alleged disability and invited Smith to participate in the committee's discussions. The committee recommended that Smith request light duty and seek counseling from the Personnel Office about switching positions, options that Smith did not pursue.

Smith argues that she is disabled under the Rehabilitation Act. In support, Smith submits lengthy medical reports detailing her "multiple impairments." [Doc. No. 37, p. 9]. Much of the

7

reports detail periods not relevant to this action. Nonetheless, Smith has submitted reports indicating that she was diagnosed during the relevant time period with fibromyalgia, reactive hypoglycemia, generalized anxiety symptoms, hypomanic symptoms, chronic dysmenorrheal endometriosis, extreme diarrhea, restless leg syndrome, memory loss, depressive disorder, bipolar disorder, and polymenorrhea. Smith had previously been diagnosed with post-traumatic stress disorder, but the record does not clearly indicate that Smith's major life functions were affected by PTSD during the relevant period. At least one doctor concluded that Smith is "incapable of any gainful employment" due to her fibromyalgia. [Doc. No. 37-13, p. 27].

The Court finds that Smith has submitted evidence sufficient to satisfy the first prong of *McDonnell Douglas*[4] and demonstrate that she is disabled. Smith has put forward numerous doctors' assessments that indicate she has substantial difficulty focusing as well as working, both activities listed as major life functions under the EEOC regulations. See *McInnis*, 207 F.3d at 281. One doctor's evaluation concluded that Smith cannot work in any capacity due to her disabilities.[5] Therefore, the Government's Motion for Summary Judgment on Smith's disability discrimination claim is DENIED.

### B.  Hostile Work Environment Claim

In her complaint, Smith alleges that Postmaster Waters violated the Rehabilitation Act by

---

[4] In Smith's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Smith supports her retaliation claim by alleging that postal management denied her FMLA leave time in February 2009. To the extent that this incident could support a disability claim under the ADA Amendments Act of 2008, the Court notes that it has already found Smith to be disabled under the more stringent, pre-amendment standards. Therefore, the Court need not evaluate Smith's disability argument under the amended standards.

[5] Of course this suggests that Smith may not be "qualified" for her employment, but the Government has not moved for summary judgment on that basis.

continually harassing her because of her disabilities. [Doc. No. 1, p. 2]. Specifically, Smith claims that Waters "orally reprimand[ed] her for having difficulties with her casing times," even though Smith's delay was due to her carpal tunnel syndrome. [Doc. No. 1, p. 2]. Smith also claims that Waters "repeatedly allowed [Smith's] co-workers to laugh and make negative comments about [Smith's] disabilities." [Doc. No. 1, p. 2].

To the extent that Smith is asserting a hostile work environment claim, the Government argues that the Court should grant summary judgment because Smith's allegations, "when viewed in the totality of the circumstances[,] are neither severe nor pervasive enough to create a hostile work environment." [Doc. No. 13-1, p. 19]. Smith does not respond to this argument in her Memorandum in Opposition.

To state a disability-based harassment claim, Smith must demonstrate that the harassment was "sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 236 (5th Cir. 2001). Whether an environment is sufficiently hostile or abusive to alter a term or condition of employment depends on the totality of the circumstances, including the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with an employee's job performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). The severity of the harassment should be judged from a reasonable person's perspective in the plaintiff's position, considering all the circumstances. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998).

The Supreme Court has repeatedly emphasized that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the

9

terms and conditions of employment." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (internal quotes omitted). Additionally, plaintiffs may not rely on "unsubstantiated assertions" of harassment to survive summary judgment. *Dortch v. Mem'l Herman Healthcare Sys.- Southwest*, 525 F. Supp. 2d 849, 874 (S.D. Tex. 2007) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

The Court finds that Smith has not alleged facts sufficient to state a hostile work environment claim. Smith does not offer specific statements of her coworkers that she interpreted as harassment, but rather relies on her allegation that Postmaster Waters allowed her co-workers to "laugh and make negative comments." Additionally, Smith claims that Postmaster Waters "orally reprimanded" her for not timely completing her assignments. Such conclusory allegations do not demonstrate that Smith was subjected to harassment sufficient to alter a term or condition of her employment. Therefore, the Government's Motion for Summary Judgment on Smith's hostile work environment claim is GRANTED.

  **C.**  **Retaliation Claim**

Smith alleges that postal management retaliated against her for "filing an EEOC Charge of Discrimination thereby violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), 16." [Doc. No. 1, p. 6]. In her Memorandum in Opposition, Smith broadens the allegedly protected activity that forms the basis of her retaliation claim: "In this case, the summary judgment evidence submitted by Ms. Smith clearly shows a close temporal proximity between several instances of protected activity and adverse actions. (See Exhibits Nos. 2, 3, 4, 5, 6, 7, 8, 9, 9A). Therefore, Ms. Smith has established a prima facie case of retaliation." [Doc. No. 37, p. 17]. These documents detail the tenuous relationship between Smith and the Bastrop

Post Office that is discussed in the facts of this Ruling.

The Government argues that the Court should grant summary judgment as to Smith's retaliation claim because Smith has not demonstrated a causal connection between her EEOC complaint and subsequent employment actions. The Government states, "[t]he only attempt at proffering evidence of such [connection] are her own bare allegations, which standing alone, [are] insufficient to show a causal connection." [Doc. No. 13-1, p. 20]. Smith argues that the proximity between the protected activity and the adverse actions is sufficient to demonstrate causality.

To establish a prima facie case of Title VII retaliation, "a plaintiff must show that: (1) [s]he engaged in activity protected by Title VII; (2) [s]he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

The Court finds that Smith has not alleged facts sufficient to state a Title VII retaliation claim. Under Title VII, a plaintiff engages in protected activity when she has either "(1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citing 42 U.S.C. § 2000e-3(a)). Here, Smith has not alleged any such protected activity. Instead, Smith has alleged disability discrimination, and her retaliation claim must be asserted under the retaliation provisions of the Rehabilitation Act. 29 U.S.C. § 794.

Therefore, the Court gives notice of its intent to *sua sponte* grant summary judgment in favor of the Government as to the Title VII retaliation claim. If Smith opposes the Court's

intended disposition of this claim, she shall file a memorandum in opposition within fourteen days of this Ruling and Judgment. Smith's memorandum shall not exceed ten pages.

If Smith intends to assert a retaliation claim under the Rehabilitation Act, Smith shall file a motion for leave to amend her complaint within fourteen days of the date of this Ruling.

### IV. CONCLUSION

For the foregoing reasons, the Government's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. The Government's Motion for Summary Judgment on Smith's hostile work environment claim under the Rehabilitation Act, 29 U.S.C. § 794, is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

The Government's Motion for Summary Judgment on Smith's disability discrimination claim under the Rehabilitation Act, 29 U.S.C. § 794, is DENIED.

To the extent that the Government moves for summary judgment on Smith's Title VII retaliation claim, 42 U.S.C. § 2000e-3(a), the Motion for Summary Judgment is DENIED on the basis asserted by the Government. The Court, however, gives notice of its intent to *sua sponte* grant summary judgment in favor of the Government as to Smith's Title VII retaliation claim. If Smith opposes the Court's intended disposition of this claim, she shall file a memorandum in opposition within fourteen days of this Ruling and Judgment. Smith's memorandum shall not exceed ten pages.

If Smith intends to assert a retaliation claim under the Rehabilitation Act, Smith shall file a motion for leave to amend her complaint within fourteen days of the date of this Ruling and Judgment.

MONROE, LOUISIANA, this 19th day of January, 2012.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE