
IN MONROE, LA.

JUL 0 3 2012

Ac

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| KIMBERLY S. SMITH | CIVIL ACTION NO.  10-0121 |
|---|---|
| VERSUS | JUDGE ROBERT G. JAMES |
| JOHN E. POTTER, ET AL. | MAG. JUDGE KAREN L. HAYES |

### RULING

Pending before the Court is Defendants Postmaster General John Potter and the United States Postal Service's (collectively, "Defendants") Second Motion for Summary Judgment. [Doc. No. 48].  Plaintiff Kimberly Smith ("Smith") filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment.  [Doc. No. 52].

For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.    FACTS

This disability discrimination, hostile work environment, and retaliation case stems from adverse employment actions Smith claims she suffered as a result of a number of disabilities.[1] Smith began working with the United States Postal Service ("USPS") on March 18, 1995.  Since late 1995, Smith has worked at the Post Office in Bastrop, Louisiana.  She has been a mail carrier throughout her career.

---

[1] Although the bulk of Smith's discrimination claims rest on her fibromyalgia, she also claims to suffer from chronic fatigue, post-traumatic stress disorder, irritable bowel syndrome, pre-diabetes, hypoglycemia, abnormal heart palpitations, and carpal tunnel syndrome, among other medical conditions.

Smith alleges that between August 2007 and February 2009, postal management, including the Bastrop Postmaster, Serinna Waters ("Waters"), discriminated against her on the basis of her disability and retaliated against her for filing discrimination complaints with the USPS Equal Employment Opportunity office ("USPS EEO office") as well as the Equal Employment Opportunity Commission ("EEOC").

On August 8, 2007, Smith claims she became ill from heat exhaustion.  Smith worked on both August 8 and 9, but on August 10 submitted a request for five days of sick leave.  Smith states that postal management denied this request even though she had accrued sufficient sick leave to cover the requested absence.  Smith filed a discrimination complaint with the USPS EEO office on August 25, 2007.

On August 29, 2007, Smith states that she again requested sick leave, but postal management denied this request.  On that same date, Smith left work because she was not feeling well.  As she drove away from the Bastrop Post Office, Smith's personal vehicle struck a police vehicle in the parking lot.  On September 13, 2007, postal management issued a Letter of Warning to Smith concerning the incident on August 29, 2007.

On September 18, 2007, Smith tripped over a power cord at the Bastrop Post Office, injuring herself.  Postal management issued a Letter of Warning that attributed the accident to Smith's "inattentiveness."  [Doc. No. 35-11, p. 65].  Postal Management also issued a Letter of Warning[2] to Smith on October 2, 2007, for failing to immediately report her heat exhaustion on August 8, 2007.  Around this period, Smith also claims that Waters allowed Smith's coworkers

---

[2]Smith states in her Amended Complaint, "Under the Postal Service's employment practices, if any employee receives three (3) Letters of Warning, he or she may be terminated." [Doc. No. 43, p. 2 n. 1].

to "laugh and make negative comments about [Smith's] disabilities." [Doc. No. 1, p. 3].

Smith filed a discrimination complaint with the EEOC on January 26, 2008.  Following this complaint, Smith claims postal management refused to give her overtime work in retaliation for the complaints.

On February 16, 2008, several postal customers noticed Smith driving erratically while delivering mail and eventually driving into a ditch.  This occurred between seven and eight p.m., although Smith was scheduled to have returned from her route by five p.m.  Police escorted Smith away from her postal vehicle, and on February 25, 2008, postal management placed Smith on non-pay status.  Postal management later reimbursed Smith for the missed pay after an internal investigation concluded that postal management was unable to rebut Smith's claim that her behavior was caused by low blood sugar.

On October 31, 2008, postal management issued Smith a notice of removal after an investigation uncovered that Smith did not disclose a prior DWI conviction on her application to USPS.  Smith states that postal management subsequently revoked the notice of removal because the DWI conviction occurred six years prior to Smith's employment with USPS.  Nonetheless, postal management placed Smith on a fourteen-day, unpaid suspension for not disclosing the DWI conviction.

In December 2008,[3] Smith amended her EEOC complaint to add a retaliation claim.

---

[3]The actual date of Smith's amended EEOC complaint is unclear based on the parties' pleadings.  In her first Complaint, Smith states that she filed her amended EEOC complaint on December 14, 2008.  [Doc. No. 1, p. 3].  In her Amended Complaint, Smith states on the first page that she filed the complaint on December 24, 2008, but then states on page 3 that she filed the complaint on December 23, 2008. [Doc. No. 43].  Defendants state in their second Statement of Material Facts that Smith filed her amended EEOC complaint on December 14, 2008.  [Doc. No. 48-3, p. 1].  Smith responded that her "Amended Complaint was filed on February 3, 2012."  [Doc. No. 52-1, p.1].

After serving her suspension, Smith submitted a request for additional leave time under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et. seq*, which postal management denied.  Smith last reported for work at the Bastrop Post Office some time between February 14, 2009, and February 19, 2009.[4]  Postal management has never officially terminated Smith's employment.

Following an investigation by postal management of her claims, Smith requested a hearing before an EEOC Administrative Law Judge ("ALJ").  The ALJ issued a decision denying Smith's claims on May 1, 2009.  Smith appealed the decision to the EEOC Field Office in New Orleans, Louisiana, which upheld the ALJ's decision on October 26, 2009.

Smith filed this suit on January 27, 2010, alleging unlawful disability discrimination and hostile work environment under the Rehabilitation Act,  29 U.S.C. §§ 791, 794.  Smith also alleged that postal management violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), by retaliating against her for filing discrimination claims.  Smith sought an injunction prohibiting postal management from engaging in any additional, discriminatory practices and ordering postal management to reinstate Smith to full pay status.  Smith also sought recovery for lost wages, liquidated damages, lost fringe benefits, other pecuniary losses, compensatory damages, attorney fees, litigation expenses, and costs.

The Court issued its Judgment on Defendants' first Motion for Summary Judgment on

---

[4]The parties disagree about the date when Smith last reported for work.  In her second Response to Defendants' Statement of Material Facts, Smith states that the "last day Ms. Smith was physically present in the Bastrop Post Office was February 14, 2009."  [Doc. No. 52-1, p. 1].  In her Memorandum in Opposition to Defendants first Motion for Summary Judgment, however, Smith states "Nevertheless, Kimberly Smith's last day at work was February 17, 2009."  [Doc. No. 37, p. 18].  Defendants state in their second Statement of Material Facts that "Her last day physically present in the Bastrop Post Office was February 19, 2009."  [Doc. No. 48-3, p. 2].

January 20, 2012.  [Doc. No. 39].  The Judgment granted Defendants' motion with regard to the

hostile work environment claim.  The Judgment denied the Defendants' motion with regard to

the disability discrimination claims.  Finally, the Judgment announced the Court's intent to *sua*

*sponte* dismiss Plaintiff's Title VII retaliation claims and recommended that Smith file an

amended complaint asserting retaliation claims under the Rehabilitation Act.

Smith filed an Amended Complaint asserting retaliation claims under the Rehabilitation

Act on February 8, 2012.  [Doc. No. 43].  Defendants filed a Second Motion for Summary

Judgment on May 9, 2012.  [Doc. No. 48].

## II.     STANDARD OF REVIEW

Summary judgment "shall [be] grant[ed] ... if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.

R. CIV. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact, but does not need to negate the elements of the nonmovants' case.

*Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  A fact is "material" if proof of its

existence or nonexistence would affect the outcome of the lawsuit under applicable law in the

case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact

is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the

nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving

party to establish the existence of a genuine dispute for trial.  *Norman v. Apache Corp.*, 19 F.3d

1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some metaphysical

doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court must accept the

evidence of the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson*,

477 U.S. at 255.

## III.   LAW & ANALYSIS

The Rehabilitation Act protects an "otherwise qualified individual with a disability in the

United States . . . [from] discrimination under any program or activity receiving Federal financial

assistance . . . or activity conducted by the United States Postal Service."  29 U.S.C. § 794(a).

The Rehabilitation Act adopts the standards applied under Title I of the Americans with

Disabilities Act ("ADA") to determine whether there has been a violation.  § 794(d).

The ADA defines a qualified individual as "an individual with a disability who, with or

without reasonable accommodation, can perform the essential functions of the employment

position that such individual holds or desires."  42 U.S.C. § 12111(8).  In turn, the ADA defines

disability as "(A) a physical or mental impairment that substantially limits one or more of the

major life activities of such individual; (B) a record of such an impairment; or (C) being regarded

as having such an impairment."  § 12102(2).

The ADA regulations provide that a plaintiff is substantially limited when he is unable to

perform a major life activity that the average person in the general population can perform or is

significantly restricted in his ability to perform the activity.  29 C.F.R. § 1630.2(j).[5]  In

determining whether an individual is substantially limited in a major life activity, EEOC

---

[5]The Fifth Circuit has noted that there are two sources of guidance for determining whether a plaintiff's disability qualifies under the Rehabilitation Act–the regulations interpreting the Rehabilitation Act as well as the regulations interpreting the ADA.  *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 (5th Cir. 2009).  Therefore, the Court uses both sources in evaluating Smith's Amended Complaint.

guidance suggests that courts consider: "(I) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long-term impact, or the expected permanent or long-term impact resulting from the impairment." 29 C.F.R. § 1630.2(j).

When a Rehabilitation Act plaintiff relies on circumstantial evidence, the Court evaluates the case under the *McDonnell Douglas* burden-shifting framework. *See generally McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 279-80 (1973)). Under this framework, a plaintiff must demonstrate "(1) he is disabled, has a record of disability, or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees." *McInnis*, 207 F.3d at 279-80.

Once a plaintiff meets this burden, the defendant must "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 280. If the defendant meets this burden, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination; or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312-13 (5th Cir. 2004).

A.    **Disability**

Defendants argue that the Court should grant summary judgment in their favor with
regard to Smith's disability discrimination claim because Smith is not a qualified individual
under the Rehabilitation Act.  Specifically, Defendants argue that Smith is not "qualified to
perform the essential functions of her position" because she cannot regularly report to the
Bastrop Post Office for work. [Doc. No. 48-1, p. 11].  In support, Defendants note that one of
Smith's treating physicians, Dr. Ralph Armstrong ("Dr. Armstrong"), stated in a form submitted
to USPS on February 16, 2009, that Smith would be unable to perform any job from February 15,
2009, until an unknown date.  Defendants also note that Dr. John Hull ("Dr. Hull"), a specialist
treating Smith, concluded that Smith was unfit for any work in June 2009, July 2009, September
2009, November 2009, and March 2010.  Defendants also note that postal management has never
terminated Smith's employment with USPS.  Instead, Smith has simply not reported to work
since February 2009.

Smith argues that being able to report for work is not necessarily required under the
Rehabilitation Act to satisfy the qualified individual standard.  Smith emphasizes that the
Rehabilitation Act requires an individualized assessment of the requirements of each job.  In the
alternative, Smith argues that regardless of the attendance requirements of her desired position,
she is a qualified individual under the Rehabilitation Act.  In support, Smith points out that Dr.
Armstrong states in a declaration submitted to the Court that Smith was capable, "from a
gynecological standpoint," of returning to her position with USPS beginning on May 13, 2009.
[Doc. No. 52-3, p. 3].  Smith also points out that Dr. Hull stated in his declaration, also submitted
to the Court, that Smith was able to perform her duties prior to May 21, 2009.  With regard to her

8

absence from work, Smith states in her Memorandum that she was placed on "non-pay status, absent without leave" because she did not provide adequate medical assessments to postal management. [Doc. No. 52, p.3]. Finally, Smith emphasizes that an employer does not necessarily discharge its duties under the Rehabilitation Act by providing medical leave to a plaintiff on a single occasion.

Smith has the burden of demonstrating that she was a qualified individual. *McInnis*, 207 F.3d at 279. Under the ADA, "[t]he term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The EEOC regulations implementing the ADA define essential functions as the "fundamental job duties of the employment position the individual with the disability holds or desires." 29 CFR § 1630.2(n)(1). Although courts must evaluate the essential functions of each position on an individual basis, *see Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 287 (1987) (noting individualized assessment is normally required), the Fifth Circuit has emphasized that "regular attendance is an essential function of most jobs." *Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) (citing a number of circuit court decisions holding regular attendance is normally an essential function of a job).

The Court finds that regular attendance is an essential function of Smith's position as a mail carrier.[6] Certainly, Smith's position as a mail carrier does not require perfect attendance.

---

[6]Although the regulations implementing the ADA require Courts to consider reassignment to a vacant position when evaluating an individual's qualified status, Smith has not identified any desired position other than her prior position as a mail carrier. 29 CFR § 1630.2(o). Further, Dr. Hull's evaluation, which is discussed below, indicates that Smith is now totally disabled. Therefore, it is unlikely that identifying a different, vacant position within USPS would change the outcome of this Ruling.

Nonetheless, her position is not such that she can perform her duties without attending work. *Cf.*
*Humphrey v. Memorial Hosp. Ass'n*, 239 F.3d 1128 (9th Cir. 2001) (ruling that reasonable
accommodation includes allowing a medical transcriptionist to work remotely when the company
already allowed other transcriptionists to work remotely). Therefore, Smith must demonstrate
that she was able to regularly attend work to be a qualified individual.

The Court finds Smith has offered sufficient evidence to create a genuine dispute as to
whether she was a qualified individual under the Rehabilitation Act through February 15, 2009,
and has not offered sufficient evidence after this date. In their memoranda, the parties focus on
the evaluations by Dr. Armstrong and Dr. Hull. Dr. Hull concluded that "prior to May 21, 2009,
[Smith] was able to perform the essential functions of her job as a mail carrier in Bastrop,
Louisiana, reasonably well." [Doc. No. 52-5]. Dr. Hull's evaluation counts as sufficient
evidence to create a genuine dispute that prior to May 21, 2009, Smith was a qualified individual.
Nonetheless, Smith admitted in her Response to Defendant's Statement of Material Facts [Doc.
No. 52-1, p. 2] that she has been unable to work at any job since "February 2009." [Doc. No. 48-
3, p.3]. Although neither Defendants' Statement of Material Facts nor Smith's Response
specifically identify February 15, 2009, as the date of the onset of Smith's total disability,
Defendants' Statement is based on the evaluations of Dr. Hull and Armstrong. Dr. Armstrong's
evaluation identified February 15, 2009, as the onset date for Smith's disability, and the parties
appear to be in agreement that Smith was totally disabled from this date onward. Therefore,
Defendants' Motion for Summary Judgment is DENIED on Smith's discrimination claims that
accrued on or before February 15, 2009. Defendants' Motion for Summary Judgment is
GRANTED on Smith's discrimination claims that accrued after February 15, 2009.

10

**B.     Retaliation Claim**

In her Amended Complaint, Smith also asserts a retaliation claim against Defendants under the Rehabilitation Act.  Smith alleges that postal management retaliated against her for filing discrimination charges with the USPS EEO office and the EEOC.  In support, Smith details the events that are discussed at length in the Facts section of this Ruling.

Defendants argue that the Court should grant summary judgment as to Smith's retaliation claim because Smith cannot establish a "causal connection between protected activity and adverse employment activity," [48-1, p. 14], and, alternatively, that she has failed to rebut its non-retaliatory reason for each employment action.  Smith responds by stating that she has established a *prima facie* case of retaliation.  Smith emphasizes the proximity of her complaints and the allegedly retaliatory conduct as well as Bastrop Postmaster Waters' knowledge of the protected activity.  Further, Smith argues that Defendants' reasons were pretextual.

The Fifth Circuit applies the *McDonnell Douglas* framework to retaliation claims under the Rehabilitation Act.  *See, e.g.*, *Shannon v. Henderson*, No. 01-10346, 2001 WL 1223633, at *3 (5th Cir. Sept. 25, 2001) (unpublished) ("While this court has not explicitly held that [*McDonnell Douglas*] would also be applicable to a retaliation claim brought under the Rehabilitation Act, both the language of the Act and the findings of our sister circuits indicate that the same framework should be applied to retaliation claims under the Rehabilitation Act.") (citations omitted).  To establish a *prima facie* claim of retaliation, a plaintiff must show that "(1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (citations omitted) (applying

11

*McDonnell Douglas* to a Title VII claim). A plaintiff engages in a protected activity when he opposes any act or practice made unlawful by the Rehabilitation Act or when he makes a charge, testifies, assists, or participates in any manner in an investigation, proceeding, or hearing under the Rehabilitation Act. *See* 42 U.S.C. § 12203(a) (defining protected activity under the ADA); 29 U.S.C. § 794 (adopting the ADA standards to determine whether there has been a violation under the Rehabilitation Act). An adverse employment action is an action "'a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (considering a Title VII claim) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).[7] Defendants have not raised these first two prongs in their motion for summary judgment. Therefore, this Ruling only addresses the third prong, which is causation.

The Fifth Circuit has held that a plaintiff's burden to establish the causation prong of a *prima facie* case of retaliation is "not as stringent" as a "but for" standard of proof. *See, e.g., Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (citing *Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). Although a plaintiff's ultimate burden of proof requires him to demonstrate "that 'but for' the protected activity, the adverse employment action would not have occurred," *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999), a plaintiff does not need to prove at the *prima facie* stage that the "protected activity was the sole factor motivating" the adverse employment action. *Long*, 88 F.3d at 305 n.4 (citations omitted). With regard to

[7] Although *Burlington* specifically addressed only Title VII retaliation claims, the Fifth Circuit has applied the same standard to ADA retaliation claims. *See, e.g., Grubic v. City of Waco*, 262 Fed. App'x 665, 666 n.6 (5th Cir. 2008) (unpublished) (citing *Seaman v. CSPH, Inc.*, 179 F.3d 297 (5th Cir. 1999)).

12

evidence of causation, the Fifth Circuit has held, "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180, 1188 (5th Cir. 1997) (emphasis and citation omitted)*; see also Evans,* 246 F.3d at 354 (noting that a time lapse of four months has been held sufficient to establish a plaintiff's *prima facie* case) (citing *Weeks v. Nations Bank, N.A.*, 2000 U.S. Dist. LEXIS 4069, at *9 (N.D. Tex. 2000)). The Fifth Circuit has also noted that an "employer's awareness of an employee's protected activity might be sufficient to establish the 'causal link' element." *Shannon,* 2001 WL 1223633, at *4 (citing *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001)).

Under the *McDonnell Douglas* framework, once a plaintiff establishes a claim of retaliation, the burden of production shifts to the defendant, who must show a legitimate, non-retaliatory reason for its action. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). If a defendant meets this burden, the burden then shifts back to the plaintiff "to establish that the defendant's permissible reason is actually a pretext for retaliation," *Septimus v. Univ. of Houston,* 399 F.3d 601, 607 (5th Cir. 2005), or "that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Rachid,* 376 F.3d at 312-13. This Ruling addresses each employment action individually.

The Court finds that Smith has offered sufficient evidence of causation to establish a *prima facie* case. Here, each employment action is near in time to an instance of protected activity. In her initial Complaint, Smith states that she "filed a claim of discrimination with the agency EEO office following the August 2007 incidents." [Doc. No. 1, p. 3]. The record

13

indicates that this complaint was filed on August 25, 2007.  [Doc. No. 37-7, p.1].  This is the first

protected activity in which Smith engaged.  Smith also alleged that she engaged in protected

activity on January 26, 2008 (EEOC complaint) and December 23, 2008 (amended EEOC

complaint).  As detailed in the facts section of this Ruling as well the discussion below, Smith

alleges adverse employment actions beginning in August 2007 and continuing through February

2009.  Further, Smith has put forward evidence that Waters was aware of her protected activity

by at least March 12, 2008.  [Doc. No. 37-9, p. 110-121].  The close proximity of these actions

and Smith's protected activity as well as Waters' knowledge of the protected activity is sufficient

to establish the causation element of Smith's *prima facie* case.

Next, the Court finds that Smith has demonstrated a genuine dispute of material fact on

two of her retaliation claims but has failed to demonstrate a genuine dispute on her remaining

claims.  Smith's first alleged instance of retaliation occurred on August 29, 2007.  On this date,

Smith alleges that Waters denied Smith's application for sick leave in retaliation for filing her

EEO complaint.  Defendants do not address this denial of leave.  Therefore, the Court finds

Smith has established a genuine dispute as to whether this employment action was retaliatory.

Defendants' Motion for Summary Judgment is DENIED on this retaliation claim.

Next, Smith alleges that Waters retaliated against her by issuing her a Letter of Warning

on September 13, 2007,[8] after Smith "had a minor collision with a [parked] police vehicle" in the

---

[8]Twice in her Amended Complaint, Smith alleges that postal management delivered a retaliatory Letter
of Warning to her on September 20, 2007.  The first time she mentions this letter, Smith indicates that the
letter concerned the August 29, 2007 incident.  Later, Smith states, "On September 20, 2007, the Plaintiff
was issued another Letter of Warning." [Doc. No. 40-2, p. 2].  To the extent that Smith is alleging a
second retaliatory letter on September 20, 2007, she has not provided the Court with the basis of this
letter.  Smith has therefore failed to offer sufficient evidence to demonstrate a *prima facie* case of
discrimination regarding this incident, and she may not assert this claim at trial.

Bastrop Post Office parking lot on August 29, 2007.  [Doc. No. 1, p. 3].  Defendants respond by

stating that on the day at issue, Plaintiff arrived at work "appearing to be under the influence"

and requested to go home.  [Doc. No. 13-1, p. 10].  While driving away from the Bastrop Post

Office, she backed into a police vehicle.  Smith allegedly told the police officer that she was not

feeling well because she was taking prescription drugs.  Defendants state that when Smith

returned to work, she presented a note that indicated she was presently under a doctor's care.

Postal management promptly placed her on emergency off-duty status until Smith could provide

medical documentation demonstrating that she was "medically able to perform all of her duties in

a safe manner, including driving a postal vehicle." [Doc. No. 13-1, p. 11].

        The Court finds that Defendants have provided a non-retaliatory reason for this adverse

employment action.  Since Smith has not offered any evidence or allegations rebutting this

explanation, Defendants' Motion for Summary Judgment is GRANTED on this retaliation claim.

        Next, Smith claims postal management retaliated against her by instructing Smith's

supervisor to issue her a Letter of Warning on October 2, 2007, for failing to timely report an

accident on August 8, 2007, and for being inattentive on September 18, 2007.  Smith states that

the accident occurred on August 8, 2007, but she was not able to report it until August 10, 2007,

due to heat exhaustion.  Smith states that the allegation of inattentiveness concerns an incident

"when [Smith] accidentally tripped over a power cord which had been left on the back dock by a

co-worker."  [Doc. No. 1, p. 3].  Further, Smith alleges that postal management requested the

letter be issued because on August 15, 2007, Smith requested five days of sick leave as a result of

heat exhaustion.  [Doc. No. 43, p. 2].

        Defendants state that postal policy requires "all employees to perform their duties in the

safest possible manner" and "if an accident occurs, report it immediately." [Doc. No. 13-1, p.

12].  Defendants note that the letter was reviewed by postal management and subsequently

removed from Smith's file.

The Court finds that Defendants have provided a non-retaliatory reason for this adverse

employment action.  Since Smith has not offered any evidence or allegations rebutting this

explanation, Defendants' Motion for Summary Judgment is GRANTED on this retaliation claim.

Smith filed her first complaint directly with the EEOC on January 26, 2008.

Next, Smith claims that postal management retaliated against her when she was placed on

off duty status in February 2008 and was not allowed to retrieve her personal belongings in

March 2008.  Smith states that on February 16, 2008, she "was on her mail route when her blood

sugar level went down, necessitating that she make a call for assistance.  Instead of providing

assistance, [Waters] ordered out [sic] of her vehicle and called the police who, in turn, took her

to the police station." [Doc. No. 1, p. 3].  Following this incident, Smith states that "without any

evidence of inappropriate behavior by [Smith], [Waters] placed [Smith] on emergency off duty

status without pay, purportedly because of the February 16, 2008 incident." [Doc. No. 1, p. 4].

Smith also states that "several days later, [Waters] refused to allow [Smith] on to the Post Office

property to get her personal belongings." [Doc. No. 1, p. 4].

Defendants respond by stating that on the day at issue, Smith was scheduled to finish her

delivery route at five p.m.  Around eight p.m.,[9] "several Postal customers witnessed [Smith]

driving her Postal vehicle erratically and eventually running off the road into a ditch." [Doc. No.

13-1, p. 12].  Defendants state that Smith refused the assistance of the customers, Waters, and

---

[9]Smith states that the incident occurred at seven p.m.  [Doc. No. 35-21, p. 3].

other carriers, and was "observed staggering, slurring her speech, imbalanced, screaming foul

language, and stating that she was on prescription drugs." [Doc. No. 13-1, p. 13]. Thereafter,

police officers escorted Smith back to the Post Office.

Smith next reported for work on February 25, 2008, and postal management placed Smith

on emergency off-duty status until she could provide documentation that she was medically able

to perform her duties. Defendants state that Smith called the Post Office on March 1, 2008, and

asked to retrieve some of her belongings from a postal vehicle. Defendants state that a temporary

supervisor was managing the facility that day. The supervisor was aware of Smith's emergency

off-duty status and told her she should wait until the normal supervisor returned the next week.

Defendants state that Smith returned to her normal duties after she provided medical

documentation.

The Court finds that Defendants have provided a non-retaliatory reason for these adverse

employment actions. Since Smith has not offered any evidence or allegations rebutting this

explanation, Defendants' Motion for Summary Judgment on these retaliation claims is

GRANTED.

Next, Smith states that she was retaliated against on October 31, 2008 when she "was

issued a Notice of Removal from the Postal Service because in 1989 the Plaintiff was convicted

of DWI and allegedly failed to answer all questions on her employment application accurately

when she applied for employment with the Postal Service on January 1, 1995." [Doc. No. 43, p.

3]. Smith states that she appealed this removal and was issued a fourteen-day suspension instead

of being terminated. She states that she returned to work on January 23, 2009.

Defendants do not offer a non-retaliatory reason for this adverse employment action.

17

Therefore, The Court finds Smith has established a genuine dispute as to whether this employment action was retaliatory.[10]  Defendants' Motion for Summary Judgment on this retaliation claim is DENIED.

On December 23, 2008, Smith amended her prior EEOC complaint to add a claim for retaliation.  Smith alleges that postal management subsequently denied her overtime in retaliation for filing her discrimination complaints.  Smith does not specify in her Complaint the period in which this alleged denial of overtime occurred.  Defendants state Smith was not provided with overtime throughout February, March, and April of 2008 because she was on extended sick leave.  Therefore, she could not work overtime.  Defendants also state that Smith typically required one to two additional hours of overtime to finish her primary route.  Therefore, Smith was not available to work overtime on the days she was normally scheduled to work.  With regard to "off day" overtime, Defendants state that "Management was instructed to reduce overtime usage by 54% at Bastrop Post Office due to decreased mail volume and staffing issues, so 'off day' overtime was no longer assigned to any carriers."  [Doc. No. 13-1, p. 13].

The Court finds that Defendants have provided a non-retaliatory reason for this adverse employment action.  Since Smith has not offered any evidence or allegations rebutting this explanation, Defendants' Motion for Summary Judgment is GRANTED on this retaliation claim.

---

[10]  Postal management subsequently revoked this notice of removal.  Viewed in the light most favorable to the nonmovant, however, notifying a reasonable person that he is being fired would deter him from engaging in protected activity even if the employer later changes course.  Therefore, this action was materially adverse to Smith and may form the basis of a retaliation claim.  *Compare Burlington*, 548 U.S. at 72-73 (ruling that a suspension without pay may constitute a materially adverse employment action even where the employer later provided the employee with backpay) *with Fercello v. County of Ramsey*, 612 F.3d 1069, 1078 (8th Cir. 2010) (ruling that being relocated to a less desirable office is "the kind of annoyance or petty slight that we have held does not constitute actionable harm").

Finally, Smith states that on February 17, 2009, she "submitted a request for leave time in accordance with [FMLA requirements]." [Doc. No. 43, p. 4].   Smith alleges that Waters denied her request "in spite of [Smith's] request for an accommodation in the form of additional leave time and without so much as engaging in a good faith interactive process to determine whether there was another appropriate accommodation." [Doc. No. 43, p. 4].  Defendants do not address this denial of leave.  Therefore, Defendants' Motion for Summary Judgment is DENIED on this retaliation claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

With regard to the discrimination claims, the Court finds Smith has offered sufficient evidence to create a genuine dispute as to whether she was a qualified individual under the Rehabilitation Act through February 15, 2009.   Therefore, Defendants' Motion for Summary Judgment is DENIED on all claims accruing on or before February 15, 2019.  The Court also finds Smith has not offered evidence sufficient to create a genuine dispute as to whether she was a qualified individual after February 15, 2009.  Therefore, Defendants' Motion for Summary Judgment is GRANTED as to all claims accruing after February 15, 2009.

With regard to the retaliation claims, Defendants' Motion for Summary Judgment is DENIED for the allegedly retaliatory actions on August 29, 2007, October 31, 2008, and February 17, 2009.  Defendants may offer non-retaliatory reasons for these actions at trial. Defendants' Motion for Summary Judgment is GRANTED with regard to the actions on September 13, 2007, October 2, 2007, February 16, 2008, February 25, 2008, March 1, 2008, and

19

the denials of overtime.

MONROE, LOUISIANA, this 3rd day of July, 2012.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE